**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| TINA L. SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:12-CV-237-JEM |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tina L. Smith on

July 12, 2012, and Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE

21], filed by Plaintiff on February 21, 2013.  Plaintiff requests that the February 23, 2011, decision

denying Supplemental Security Income benefits be remanded.  For the reasons set forth below, the

Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On May 8, 2009, Plaintiff filed an application for Supplemental Security Income ("SSI")

benefits, alleging disability as of April 1, 2009, due to depression and psychotic features.  Plaintiff

was denied initially and on reconsideration, and she timely filed a request for hearing.  On December

10, 2010, a hearing was held before Administrative Law Judge ("ALJ") Bryan Bernstein at which

Plaintiff and a Vocational Expert ("VE") testified. On February 23, 2012, the ALJ issued his

decision in which he found Plaintiff not disabled.  The Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. §

416.1481.  Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review

of the Commissioner's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.    Background

Plaintiff was forty years old at the time of her alleged onset date.  She had a high school education.  She had past relevant work as a hand packager, home health aide, and child care worker.

### B.    Medical Evidence

Plaintiff's mental health records begin with a visit to River Valley Behavioral Health Center in Owensboro, Kentucky, on February 9, 2009, for complaints of "confusion, depression, memory loss, anxiety, [and] flashbacks."  AR 288.  Staff noted that she was living in a shelter, had no income, had several open cases in the legal system, and had a very limited primary support group. Outpatient therapy with a psychiatrist was recommended.  On February 27, 2009, Plaintiff saw a psychiatrist who noted she was confused, disoriented, and defensive when questioned about past drug use.  The psychiatrist diagnosed Plaintiff with major depression and increased her medications, which had earlier been prescribed at a local free clinic.

On April 25, 2009, Plaintiff called the police because she needed help.  The police referred her to the YWCA who referred her to the emergency room at Deaconess Health Systems in Evansville, Indiana.  The doctor there noted that Plaintiff had no money or insurance, was not taking her medications, and had not seen the psychiatric nurse practitioner with whom she had had an appointment.  He further noted that it was very difficult to get a history from Plaintiff and that

Plaintiff had "tangential thought processes." AR 268. Plaintiff was admitted for further psychiatric evaluation.

Plaintiff applied for SSI in May 2009. In June 2009, Plaintiff moved from Kentucky to Fort Wayne, Indiana, to  live with family. In August 2009, a non-examining state agency doctor concluded there was not enough evidence in the record to make a determination on Plaintiff's application. In November 2009, a consultative mental examination was performed by Sherwin Kepes, PhD. He provided a diagnosis of Major Depressive Disorder, Recurrent, Moderate. He concluded that he believed Plaintiff's "depression in the past very easily could have been rather severe." He continued, "Currently, she is evidencing signs of depression in terms of anhedonia, tearfulness, irritability, and low self-esteem."

In December 2009, Plaintiff resumed her mental health treatment, presenting at Park Center in Fort Wayne, where Dr. Vijoy Varma was among the treating staff. Intake documents include a diagnosis of Major Depressive Disorder, Recurrent, Severe without Psychotic Features and a Global Assessment of Functioning ("GAF") score of 55. They further note Plaintiff worried excessively, was depressed and angry, displayed hopelessness, had problems with recent and remote memory, showed evidence of mild disruption in thought processes, was unable to stay on task, became agitated when confronted with a problem, had panic attacks, had trouble sleeping and eating, and had a moderate level of depression.

In April 2010, Dr. Varma performed a psychiatric evaluation. He wrote that Plaintiff presented with mood fluctuations, agitation, violence, paranoia, a history of abuse or trauma, and anxiety and was also experiencing sleep problems. Dr. Varma noted that Plaintiff was "extremely difficult to interview," making it difficult to get an accurate history. AR 350. He assigned a GAF

score of 55 and diagnosed Major Depressive Disorder, Recurrent, Severe without Psychotic Features, and Personality Disorder NOS.  Plaintiff saw Dr. Varma again in June, August, October, and November of 2010.

At the center of this appeal is a medical source statement in the form of a questionnaire—presumably provided by Plaintiff's attorney—completed by Dr. Varma on December 9, 2010, the day before the administrative hearing.  In that statement, Dr. Varma noted that he had reviewed the records of Deaconess Health Systems, River Valley Behavioral Health, and Sherwin Kepes, Ph.D. in forming his opinions.  He also answered "Yes" when asked if he had seen Plaintiff "with the frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [his] patient's medical condition(s)."  AR 461.  He listed diagnoses of personality disorder and recurrent, severe major depressive disorder without psychotic features.  When asked to describe the clinical findings which demonstrated the severity of Plaintiff's mental impairments, he wrote "comprehensive psychiatric evaluation, along with a detailed mental status examination." AR 462.  When asked to list the symptoms from which Plaintiff was presently suffering as a result of her impairments, he responded, "getting confused, headache, sadness, anxiety, trouble sleeping, admitted to paranoia ."

The medical source statement questionnaire then asked: "If your patient were to work on a full-time basis, . . . how many days would your patient miss per month due to mental illness?"  Dr. Varma checked the "greater than 3 days" box and explained Plaintiff would miss work "due to problems with depression and relating to people."  AR 463.  Finally, Dr. Varma stated Plaintiff would be able to remain "on task" less than 85% of the day.

**C.     Vocational Expert's Testimony**

At the administrative hearing, Plaintiff's attorney asked the VE what the tolerance for absenteeism was for any unskilled work.  The VE replied that missing one or more days a month beyond sick time or vacation time would result in severe reprimand and/or dismissal.  He further testified that an accumulation of more than ten days missed in a year would lead to termination.

**D.     ALJ's Decision**

The ALJ found that Plaintiff had two severe impairments: major depressive disorder and personality disorder.  He found that these impairments did not, however, meet or equal a Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  He then determined Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with nonexertional limitations, including being unable to perform work that "imposes close regimentation of production," that requires contact with the public, or that requires working closely with co-workers.  He found Plaintiff would be unable to perform any of her past relevant work.  He found, however, that there are jobs that exist in significant numbers in the national economy that the claimant can perform, namely as an industrial cleaner, dayworker, or store laborer/order picker.  Accordingly, the ALJ found Plaintiff not disabled since the date of her application.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).  Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe?  If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet

or equal a listed impairment in the appendix to the regulations?  If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the

claimant's past relevant work?  If yes, the claimant is not disabled, and the claim is denied; if no,

then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's

RFC, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is

denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see*

*also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC.  The

RFC "is an administrative assessment of what work-related activities an individual can perform

despite [his] limitations."  *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR

96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted).  The RFC

should be based on evidence in the record.  *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing

20 C.F.R. § 404.1545(a)(3)).  The claimant bears the burden of proving steps one through four,

whereas the burden at step five is on the ALJ.  *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*,

55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks remand of the ALJ's decision based on a single argument:  She argues the ALJ

improperly determined the weight to give to the December 9, 2010, medical source statement of

treating psychiatrist Dr. Vijoy Varma.

A treating physician's opinion regarding the nature and severity of a claimant's impairment

must be given controlling weight if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the

claimant's] case record" unless the opinion is on an issue reserved to the Commissioner.  20 C.F.R. § 416.927(c)(2), (d)(3).  Issues reserved to the Commissioner include whether a claimant is disabled, whether a claimant meets or equals a Listing, the claimant's residual functioning capacity, and the application of vocational factors. 20 C.F.R. § 416.927(d)(1)-(2).  Opinions on whether a claimant is disabled include those in the form of a direct statement that she "is disabled" but may also come in the form of a statement that the claimant is "unable to work" or other similar statements.  *See* 20 C.F.R. § 416.927(d)(1); S.S.R. 96-5p, 1996 WL 374183, at \*5 (July 2, 1996).

The ALJ declined to give Dr. Varma's opinion controlling weight because "the issue of disability is one reserved to the Commissioner."  AR 23.  The ALJ apparently equated Dr. Varma's statement that Plaintiff would miss at least three days of work a month to a statement that she is disabled.  Plaintiff argues that Dr. Varma's opinion was "much more specific" than a simple opinion that Plaintiff "is disabled" or "unable to work" and, therefore, does not constitute an opinion on an issue reserved to the Commissioner.  Had Dr. Varma simply offered an opinion that Plaintiff would likely be unable to get out of bed, paralyzed by anxiety, or occupied with doctor's appointments several days a month, Plaintiff's argument would be more persuasive.  But Dr. Varma's opinion was not just an observation about Plaintiff's impairments that happened to bear on Plaintiff's potential absenteeism.  It was a response to a question which appears to have been designed specifically to elicit a response that directly equated to "unable to work a full time job."  As such, the opinion—at least the part about Plaintiff being likely to miss more than three days of work a month—is arguably the equivalent of a legal finding of "disabled" and may not be entitled to controlling weight.

However, even if an ALJ is justified in not giving a treating physician's opinion controlling weight, he cannot simply discard the opinion, but must still determine what lesser weight to give it,

9

just as he would for any other medical opinion.  20 C.F.R.  § 416.927(c)(2); *Roddy*, 705 F.3d at 636-

37; *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th

Cir. 2010).  To determine what weight to give a non-controlling opinion, an ALJ must evaluate the

opinion according to the factors enumerated in the 20 C.F.R. § 416.927(c).  These factors include

how well the medical source supports his opinion with relevant evidence and explanation; whether

the opinion is consistent with the record as a whole; whether the source of the opinion is a specialist;

the relationship between claimant and source of the opinion; and any other factors which "tend to

support or contradict the opinion."  20 C.F.R. § 416.927(c)(1), (3), (4), (5), & (6).  Even opinions

on issues reserved to the Commissioner cannot simply be ignored, but must be "carefully

consider[ed]" by the ALJ.  S.S.R. 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *see also Bjornson*

*v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012).  An ALJ need only minimally articulate his reasons

for discrediting a medical source's opinion.  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

 In this case, the ALJ stated he only gave Dr. Varma's opinion "some weight" because "Dr.

Varma is not specially trained in the rules and regulations of Social Security" and his opinion is "not

supported by any objective or clinical observation of signs or symptoms."  AR 23.  Plaintiff argues

neither is an adequate reason to discount Dr. Varma's opinion.

First, Plaintiff acknowledges that the regulations permit an ALJ to consider how familiar a

medical source is with federal disability programs and their evidentiary requirements.  20 C.F.R. §

416.927(c)(6).  However, Plaintiff argues this factor is intended to give bonus points to the opinion

of a doctor who is familiar with the programs, not to penalize the opinion of a doctor who is

unfamiliar with them. The ALJ provided no explanation of how Dr. Varma's lack of familiarity with

disability programs detracted from his opinion.  Plaintiff cites no case law in support of his

interpretation of this factor.  The Commissioner's response brief provides no argument on the issue.

The Court's best guess is that because the ALJ read Dr. Varma's opinion to mean that Plaintiff was

"disabled," Dr. Varma's lack of familiarity with the legal definition of disability undermines that

opinion.  *See Bjornson*, 671 F.3d at 648 (finding fault with ALJ's application of this factor when the

doctor's "familiarity with the social security disability program could be relevant only if it permitted

him to offer an opinion concerning [Plaintiff's] eligibility—which the administrative law judge had

just said was the prerogative of the Social Security Administration").  However, the Court cannot

base its decision on a guess, but must be able to trace the path of the ALJ's reasoning from text of

his decision.  *Giles*, 483 F.3d at 487.  Therefore, Dr. Varma's unfamiliarity with disability programs

was not a valid reason to discount his opinion.

Next, Plaintiff argues the ALJ's only other reason for discounting Dr. Varma's opinion—that

it is not supported by *any* objective or clinical observation of signs and symptoms—is invalid

because Dr. Varma did, in fact, provide some support.  She argues that Dr. Varma's listing of

symptoms, including "getting confused, headaches, sadness, anxiety, trouble sleeping, and

paranoia," provides the exact support the ALJ found lacking, especially since those symptoms are

further supported by the treatment records provided by Dr. Varma and his team at Park Center.

The "supportability" factor reflects the long-standing skepticism of medical opinions

provided in the form of brief answers to a questionnaire, which are frequently criticized for their

conclusory nature and lack of supporting facts.  *See, e.g., Larson*, 615 F.3d at 751 (stating that

"check-box form" opinions are generally "weak evidence"); *Eskew v. Astrue*, 462 Fed. App'x 613,

616 (7th Cir. 2011) (noting the Seventh Circuit has "discounted" medical opinions in the form of

a  "check-box form"); *Phillips v. Astrue*, 413 Fed. App'x 878, 881 (7th Cir. 2010) (criticizing an

ALJ's reliance on a "checkbox" opinion in which the doctor "did not explain any of his findings, or discuss the extensive medical record, or even identify the portions of the medical record he deemed significant"). If a consulting doctor who gives his opinion based solely on the review of some other doctors' treatment notes failed to direct the ALJ to the specific tests or observations upon which he formed his opinion or explain why those tests and observations supported his opinion, the ALJ would have no way of knowing whether the opinion was well-founded. The need for such detailed support is reduced, however, when the opinion provided is based on a doctor's own observation and treatment of the claimant and when the ALJ has access to those same records to check the soundness of the opinion. *See* 20 C.F.R. § 416.916(c)(2) (explaining that treating physicians' opinions are generally entitled to more deference because they "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"); *see also Larson,* 615 F.3d at 751 ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records" from the doctor providing the opinion.)

Although Dr. Varma certainly could have more thoroughly marshaled the facts and reasoning behind his conclusions, especially his opinion on Plaintiff's potential absenteeism, it is not true that he failed to provide "*any* objective or clinical observation of signs or symptoms." AR 23 (emphasis added). Dr. Varma listed symptoms of "getting confused, headaches, sadness, anxiety, trouble sleeping, and paranoia," and the ALJ had full access to Park Center treatment records to check the basis for the opinion. Those supporting documents included the clinical observations of Dr. Varma and his team at Park Center and included GAF scores, an objective measure of mental impairments. Even if, as the Commissioner argues, those records provided only weak support for Dr. Varma's

conclusions, it was the job of the ALJ and not the Commissioner to explain that reasoning. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("[P]rinciples of administrative law require . . . [a court] to confine [its] review to the reasons supplied by the ALJ.")

Because none of the reasons provided by the ALJ for giving Dr. Varma's opinion only "some weight"are valid, they do not create a "logical bridge" to the ALJ's conclusion, and the Court must remand.  On remand, the ALJ is encouraged to "make 'every reasonable effort' to recontact [Dr. Varma] for clarification of the reasons for the opinion," as Ruling 96-5p suggests.  S.S.R. 96-5p, at *6.

### CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 21] and **REMANDS** this matter for further proceedings consistent with this opinion.

So ORDERED this 27th day of September, 2013.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record